UNITED STATES BANKRUPTCY COURT                          NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x
In re:                                                          :        Chapter 11
      Ditech Holding Corporation, *et al.*,             :        Case No. 19-10412 (JLG)
                                                        :
                  Debtors. [1]              :        (Jointly Administered)
------------------------------------------------------------------------x
Angela and Kenneth Ellison,                                     :
                                                        :
                  Plaintiffs,               :
                                                        :
v.                                                              :        Adv. P. No.: 19-01296 (JLG)
                                                        :
Ditech Financial, LLC.,                                         :
                                                        :
                  Defendant.                :
------------------------------------------------------------------------x

## MEMORANDUM DECISION AND ORDER GRANTING MOVANTS' MOTION TO DISMISS

---

[1] On September 26, 2019, the Court confirmed the *Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors* (ECF No. 1404) (the "Third Amended Plan"), which created the Wind Down Estates. On February 22, 2022, the Court entered the *Order Granting Entry of Final Decree (I) Closing Subsidiary Cases; and (II) Granting Related Relief*, ECF No. 3903 (the "Closing Order"). References to "ECF No. __" are to documents filed on the electronic docket in these jointly administered cases under Case No. 19-10412. Pursuant to the Closing Order, the chapter 11 cases of the following Wind Down Estates were closed effective as of February 22, 2022: DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). Under the Closing Order, the chapter 11 case of Ditech Holding Corporation (the "Remaining Wind Down Estate"), Case No. 19-10412, remains open and, as of February 22, 2022, all motions, notices and other pleadings relating to any of the Wind Down Estates are to be filed in the case of the Remaining Wind Down Estate. The last four digits of the Remaining Wind Down Estate's federal tax identification number is (0486). The Remaining Wind Down Estate's principal offices are located at 2600 South Shore Blvd., Suite 300, League City, TX 77573.

**A P P E A R A N C E S :**

WEIL, GOTSHAL & MANGES LLP
*Counsel to the Plan Administrator*
767 Fifth Avenue
New York, NY 10153
By:    Richard W. Slack
       Sunny Singh

JENNER & BLOCK, LLP
*Attorneys for the Consumer Claims Trustee*
1155 Avenue of the Americas
New York, NY 10036
By:    Richard Levin

**HON. JAMES L. GARRITY, JR.
U.S. BANKRUPTCY JUDGE**

## INTRODUCTION[2]

The matter before the Court is the joint motion (the "Motion")[3] of the Plan Administrator,

on behalf of Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) ("Ditech")

and its debtor affiliates (excluding Reorganized Reverse Mortgage Solutions), and the Consumer

Claims Trustee, as fiduciaries under the Plan (collectively, the "Movants"), to dismiss this

adversary proceeding (the "Adversary Proceeding") filed by Angela Ellison ("Angela") and

Kenneth Ellison ("Kenneth" and with Angela, the "Plaintiffs") against Ditech Financial, LLC

("Ditech Financial"), with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure ("Rule 12(b)(6)"), as incorporated through Rule 7012(b) of the Federal Rules of

---

[2] Capitalized terms shall have the meanings ascribed to them herein. References to "AP ECF No.     " denote entries on the docket of this Adversary Proceeding No. 19-01296. References to "ECF No. __" denote entries on the docket of the main bankruptcy case, Case No. 19-10412 (the "Main Bankruptcy Case").

[3] *Motion to Dismiss Adversary Proceeding / Joint Motion of the Plan Administrator and the Consumer Claims Trustee to Dismiss the Adversary Complaint*, AP ECF No. 19.

Bankruptcy Procedure. The Plaintiffs commenced the Adversary Proceeding by filing a complaint (the "Adversary Complaint")[4] against Ditech Financial.

The Plaintiffs did not respond to the Motion. The Court held a hearing on the Motion. The Movants appeared at the hearing through counsel. The Plaintiffs failed to appear.[5] For the reasons set forth below, the Court grants the Motion and dismisses the Adversary Proceeding with prejudice.

**JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1) and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

**BACKGROUND**

**The Mortgage and Its Servicing History**

On March 25, 2005, the Plaintiffs executed a promissory note (the "Note") secured by a deed of trust (the "Deed of Trust") on the property located at 4800 Hideout Trail, Arlington, Texas 76016 (the "Property"), in favor of Aames Funding Corporation D/B/A Aames Home Loan ("Aames"), as lender and beneficiary. The Note and Deed of Trust collectively constitute the mortgage loan (the "Mortgage") that is the subject of this dispute. *See* Adversary Complaint ¶ 22.

On August 3, 2015, Accredited Home Lenders, Inc., successor by merger to Aames, assigned the Deed of Trust to Deutsche Bank National Trust Company ("Deutsche Bank") in its

---

[4] *Complaint*, AP ECF No. 1.

[5] At the hearing, the Movants stated they made diligent effort to contact the Plaintiffs including sending them emails to four known email addresses and postal letters to their addresses.

capacity as indenture trustee for noteholders of Aames Mortgage Investment Trust 2005-2, a Delaware statutory trust (the "Assignment"). *See* Adversary Complaint, Ex. H. In March 2016, servicing of the Mortgage was transferred from Residential Credit Solutions ("RCS") to Ditech Financial. *See id.* ¶ 14.

### The Texas Bankruptcy Court Litigation

In May 2015, Angela filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code (the "Texas Bankruptcy Case")[6] in the United States Bankruptcy Court for the Northern District of Texas (the "Texas Bankruptcy Court"). On March 14, 2016, the Texas Bankruptcy Case was closed and the trustee discharged.[7] On March 23, 2017, the Texas Bankruptcy Court granted the Angela's motion to reopen the bankruptcy case.[8]

On June 6, 2017, while the Texas Bankruptcy Case was pending, the Plaintiffs commenced a lawsuit in Texas state court (the "Texas Action") by filing a complaint against Aames, CWABS, Inc., Deutsche Bank, Wells Fargo Bank, NA, Mortgage Electronic Registration System ("MERS"), and other unnamed defendants. The Texas Action was removed to the United States District Court for the Northern District of Texas (the "Texas District Court") and then referred to the Texas Bankruptcy Court.[9] In the Texas Action, the Plaintiffs sought, among other things, a determination that as a result of an allegedly invalid Assignment of the Deed of Trust, the mortgage holder lacked standing to foreclose the Mortgage and, therefore, the attempts at foreclosure were invalid. Texas

---

[6] *See In re Ellison*, No. 15-42046 (Bankr. N.D. Tex. 2015). References to "TX ECF No. __" refer to entries on the docket of Case No. 15-42046.

[7] *Order Approving Trustee Report and Discharging Trustee, In re Ellison*, TX ECF No. 52. A copy of the order is annexed as Exhibit C to the Motion.

[8] *Order on Motion to Reopen to Vacate Chapter 7 Discharge*, TX ECF No. 59. A copy of the order is annexed as Exhibit D to the Motion.

[9] A copy of the order referring the Texas Action Complaint to the Texas Bankruptcy Court is annexed as Exhibit F to the Motion.

Action Complaint[10] ¶ 5. The Plaintiffs insisted "a 'Void Assignment' would not pass title and defendants don't have interest ownership in the Property." *Id*.

In the complaint, the Plaintiffs described their acquisition of the Property and financing history, stating they were "the Superior Recorded owners of the Prime Market Property as of 2002" and had sought a "cash out-refi loan from the original $148,000 conventional good credit loan." *Id*. ¶¶ 13-14. On March 25, 2005, they "entered into a purported loan with [Aames] for $163,000.00," but "the direct cash out never materialized." *Id*. ¶ 15. They noted that only Kenneth signed the Note. *Id*. ¶ 16.

The Plaintiffs alleged that the loan was a "table funded securitized trust" that was "undisclosed and unknown to Plaintiff(s) from origination." *Id*. ¶ 9. They claimed they "were issued an Uncertificated Security to execute unknowingly in the capacity of (Accommodation Party) to a tangible note bill of exchange." *Id*. ¶ 19 (emphasis omitted).

The complaint alleged multiple foreclosure attempts between 2008 and 2017, including filings by RCS as servicer for Deutsche Bank. *Id*. ¶¶ 23-31. The Plaintiffs highlighted a September 4, 2015 assignment, which they characterized as occurring "approximately 10 years after the Closing Date of the [Deed of] Trust in violation of the terms of the [Deed of] Trust and is therefore, void." *Id*. ¶¶ 28-30.

The Plaintiffs alleged that defendants "failed to preserve a proper chain of title" for the Deed of Trust, claiming a "proper chain of title requires [Aames] (the original lender) to transfer

---

[10] *See Plaintiffs' Amended Complaint, Ellison v. Aames Funding Corp. (In re Ellison)*, No. 4:17-CV-00560-A (N.D. Tex. Aug. 23, 2017) (the "Texas Action Complaint"). A copy of the complaint is annexed as Exhibit E to the Motion.

its interest to AAMES Investment Corp (Seller) then to CWABS Inc., (Depositor) and then to

Deutsche Bank Trustee for AAMES 2005-2 by UCC 1 Financial Statement[s]." *Id.* ¶ 35.

The Plaintiffs brought several claims, organized as:

Encumbering Real Property (Claims 1, 7, 8)

The Plaintiffs alleged that "Defendants are attempting to foreclose on Plaintiff(s) [P]roperty without lawful authority to do so" because "the Tangible Note was never negotiated by AAMES Funding Corporation in accordance to the securitized trust requirements." Texas Action Complaint ¶ 41. They claimed that "once the Tangible Note converted to Electronic Chattel Paper- the Intangible Note (controlled by MERS) was no longer a negotiable instrument and lost it's real property security interest component as unsecured STOCK equivalent." *Id.* The Plaintiffs further alleged that the defendants "failed to perfect their interest in the residual obligation (receivables-securities) under UCC-8 negotiated to the REMIC" and "knowingly broke chain of title as an operation of business in the AAMES Mortgage 2005-2 1031 Exchange." *Id.*

Loan Transaction Scheme (Claims 2-6)

The Plaintiffs alleged that the "purported loan transaction entered into with [Aames] for $163,000.00 was a table funded securitized trust never disclosed to Plaintiff(s)." *Id.* ¶ 42. They claimed "the loan was 'settled' not 'negotiated by [Aames] and any such terms of a 1031 Exchange was concealed from Plaintiff(s)." *Id.* The Plaintiffs stated they "at all times at the origination of this loan transaction believed they negotiated an instrument for a loan and received consideration in the form of money loaned for their home" while "the lender [Aames] did not lend money, but their capacity to the SVP Exchange." *Id.* They alleged the "purported loan Contract was not a True Sale in the ordinary course of business" and that "[Aames] never negotiated the Tangible Note by operation of law for full value." *Id.*

Lack of Endorsement On The Note Renders The Negotiation Void

The Plaintiffs alleged "there is a material breakdown in the Assignment Chain to the Deed of Trust on the purported Note in the 1031 Exchange Trust and the Assignment is void." *Id.* ¶ 43. They claimed "Defendants attempted to bypass the Assignment Chain of Title and that all relevant parties did not endorse the Note." *Id.* The Plaintiffs further asserted that "CWABS Inc., the (Depositor) did not deliver the Note and the Deed of Trust to the Trustee as required in the 1031 transaction to ensure a True Sale" and that "the new Assignment to the Deed of Trust after the closing date of the Trust violates the

6

express terms of the Trust Instrument under the Prospectus and New York Estates Powers and Trust art 2-§7-2.4." *Id.*

In their "Prayer for Relief," the Plaintiffs sought an order (i) declaring that the defendants "lack any interest in the subject [P]roperty which would permit them to foreclose," (ii) enjoining the September 5, 2017 foreclosure sale, (iii) declaring "the trust deed is not a lien against the subject properties" and (iv) "quieting title to the subject properties," refund of improperly collected fees, pre- and post-judgment interest, attorneys' fees, economic damages, and monetary relief "over $100,000 but not more than $2,000,000.00." *Id.* at 9-10.

On April 19, 2018, the Texas Bankruptcy Court dismissed the Texas Action Complaint with prejudice (the "Texas Bankruptcy Court Order").[11] In brief, it dismissed "all claims Plaintiffs asserted, or could have asserted, against Defendants in the above-captioned proceeding." On appeal, the Texas District Court affirmed the order. It dismissed the Plaintiffs' appeal "as frivolous." *See* Texas District Court Order at 9-10.[12]

## The Chapter 11 Cases

On February 11, 2019 (the "Petition Date"), Ditech and certain of its affiliates, including Ditech Financial (collectively, the "Debtors"), filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases"). The Debtors remained in possession and control of their business and assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 22, 2019, the Court entered an order fixing April 1, 2019, as the deadline for each person or entity to file a proof of claim in the Chapter 11 Cases (the

---

[11] *See Order of Dismissal, Ellison v. Aames Funding Corp. (In re Ellison)*, Adv. Pro. No. 17-4114 (Bankr. N.D. Tex. Apr. 19, 2018). A copy of the order is annexed as Exhibit G to the Motion.

[12] *Order, Ellison v. Aames Funding Corp. (In re Ellison)*, No. 4:18-CV-00329 (N.D. Tex. Aug. 17, 2018). A copy of the order is annexed as Exhibit H to the Motion.

"General Bar Date").[13] The Court extended the General Bar Date for consumer borrowers to June 3, 2019.[14] On September 26, 2019, the Debtors confirmed their Plan, which went into effect on September 30, 2019.[15] On November 19, 2019, the Court entered an order establishing claims objection and claims hearing procedure to streamline the claims process (the "Claims Process").[16]

On April 25, 2019, the Plaintiffs filed Proof of Claim No. 1357 in these Chapter 11 Cases for a claim in the amount of $386,000.00 (the "Claim"). The Plaintiffs designated the Claim as "secured." Claim at 2.[17] In support of the Claim, the Plaintiffs annexed a letter contesting Ditech Financial's legal standing to assert any rights related to the Mortgage. *Id*. at 3. The letter contained various enclosures, which, as relevant, include:

     i.     a "Matrix" or list of the documents enclosed, titled "Claim Documentation Evidentiary No Mortgage Claim Standing and Damages Court Document Cross Reference," referencing the Texas Action, Texas Bankruptcy Case, the documents filed therein, and the "Evidentiary Legal Issues on Appeal" in the Texas Bankruptcy Case, *id*. at 4-7,

    ii.     a damages calculation, totaling $386,000.00 (comprised of $261,000 in property value plus $125,000 for alleged wrongful foreclosure attempts). *id*. at 5,

   iii.     an objection to the designation of Ditech Financial as an expert witness filed in the Texas Bankruptcy Court case, *id*. at 10-12,

   iv.     copies of letters to the Plaintiffs from Ditech Financial and RCS, respectively, *id*. at 13-15, 17,

---

[13] *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, ECF No. 90.

[14] *Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc*, ECF No. 496.

[15] *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and Its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims*, ECF No. 1449.

[16] *Order Approving (I) Claim Objection Procedures and (II) Claim Hearing Procedures*, ECF No. 1632 (the "Claims Procedures Order").

[17] Page numbers refer to the PDF page numbers of the Claim.

v.     excerpts from a certified loan audit, stating "Foreclosure Action dependent upon invalid assignment of Deed of Trust," *id*. at 16,

vi.    a copy of a 2015 assignment of the Deed of Trust, *id*. at 18-19, which the Plaintiffs characterized as occurring ten years "after purported loan," *id*. at 5, and

vii.   various documents filed in the Texas Action and Texas Bankruptcy Case, *id*. at 16-24.

### *The Plaintiffs' Adversary Proceeding*

On June 12, 2019, the Plaintiffs commenced the Adversary Proceeding against Ditech Financial, seeking monetary damages of $386,000 and interim injunctive relief pending determination of their claims. Adversary Complaint ¶¶ 55-57. The Plaintiffs assert that the Adversary Complaint was "not to duplicate litigation, but in furtherance to adjudicate unresolved evidentiary issues on 'standing' related to the claims." *Id.* ¶ 17.

The Plaintiffs allege that the Mortgage originated on March 25, 2005, with Aames. *Id.* ¶ 12. They claim the Mortgage was serviced by RCS until March 2016, when servicing was transferred to Ditech Financial. *Id.* ¶ 14. The Plaintiffs assert that on September 4, 2015, RCS recorded an assignment of the Deed of Trust from Accredited Home Lenders to Deutsche Bank National Trust Company. *Id.* ¶ 12. The Plaintiffs characterize this assignment as "10 year[s] late" and allege it was done "post-petition"—after they commenced the Texas Bankruptcy Case. *Id.* ¶ 19.

In support of Count I of the Adversary Complaint, *id.* ¶¶ 26-37, the Plaintiffs allege Ditech Financial did not have standing to foreclose the Mortgage, *id.* ¶ 26. They claim there was "no 'original' assignment of the [N]ote related to the Deed of Trust" and the "late assignment 10 years later is not credible." *Id.* ¶ 27. They contend that once the legal transfer to the REMIC trust failed, "the Deed of Trust assignment is void" and "the power of sale to foreclosure crumbles." *Id.* ¶ 34.

In support of Count II of the Adversary Complaint, *id.* ¶¶ 38-54, the Plaintiffs allege the Assignment was ineffective because the transfers did not comply with "common law and trust rules of New York (NYEPL) § 7-2.4 and the REMIC I.R.C. 860A through 860G," *id.* ¶ 38. They further allege that they were "induced to sign a Deed of Trust instrument" without knowledge of origination issues with the loan contract. *Id.* ¶ 43.[18]

On January 15, 2020, the parties stipulated and this Court ordered that "the Defendant's deadline to move, answer, or otherwise respond to [the Adversary Complaint] is stayed until further order of the Court."[19] The stipulation was entered following a November 14, 2019 hearing, during which the Plaintiffs agreed to extend the deadline in order to first pursue their claims through the Claims Process, before pursuing litigation in the Adversary Proceeding.[20]

### *The Claims Process and Disallowance of Plaintiffs' Claim*

On December 23, 2020, the Movants filed the Sixty-Seventh Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Claims) (the "Omnibus Objection"),[21] objecting to various consumer creditor claims, including the Claim, based on (i) insufficient evidence to support the validity of such claims in the amounts and priority asserted, (ii) a lack of merit to the claims, and (iii) such claims no longer existing based on correction to the consumer claimants' accounts. *See* Omnibus Objection ¶ 12.

---

[18] In November 2019, the Plaintiffs sought a default judgment against Ditech Financial. *See Memorandum of Points and Authority in Support of Complaint Allegation for Default Judgment*, AP ECF No. 13. However, this request for relief was rendered moot by stipulation when the Plaintiffs withdrew their request for entry of a default judgment. *See Stipulation and Order*, AP ECF No. 17.

[19] *Stipulation and Order*, AP ECF No. 17.

[20] *See* H'rg Tr. 42:21-53:24, Nov. 14, 2019. A copy of the transcript is annexed to the Motion as Exhibit I.

[21] *Sixty-Seventh Omnibus Objection to Proofs of Claim (No Basis Consumer Creditor Claims)*, ECF No. 3121.

On February 25, 2021, the Plaintiffs filed an opposition to the Omnibus Objection (the "Opposition").[22] In support of the Opposition, the Plaintiffs relied on the allegations in the Adversary Proceeding. Opposition at 2, 4 (stating "there are a unique set of facts to support the merits of the [Claim] and more plead[ings] in the Adversary Proceedings" and "[t]he Adversary Complaint is well pled and the [Claim] with supported documentation and other information allows the Court to make a reasonable inference that Ditech [Financial] has engaged in liable misconduct").

On April 22, 2021, the Movants filed a joint reply, asserting, among other things, that the Claim should be disallowed and expunged based on the res judicata effect of the Texas District Court Order.[23]

On May 21, 2021, the Court sustained the Omnibus Objection with respect to the Claim, and disallowed and expunged the Claim (the "Decision and Order").[24] The Court disallowed the Claim on the ground that the doctrine of res judicata, as applied under Texas law, barred Plaintiffs from obtaining any recovery under the Claim. Decision and Order at 3, 18. The Court examined the elements of res judicata under Texas law, and found that all three requirements were satisfied: "(1) a prior final determination on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were or could have been raised in the first action." *Id*. at 13. Although Ditech Financial was not a party to

---

[22] *Opposition to Objection of Claim*, ECF No. 3253.

[23] *Joint Reply of Plan Administrator and Consumer Representative in Supp. of the Sixty-Seventh Omnibus Obj. with Respect to Claim of Kenneth Ellison & Angela Ellison (Claim No. 1357)*, ECF No. 3340.

[24] *Memorandum Decision and Order Sustaining the Sixty-Seventh Omnibus Objection (No Basis Consumer Creditor Claims) with Respect to the Claim of Kenneth Ellison and Angela Ellison*, ECF No. 3400, as correct by the *Errata Order Regarding Memorandum Decision and Order Sustaining the Sixty-Seventh Omnibus Objection (No Basis Consumer Creditor Claims) with Respect to the Claim of Kenneth Ellison and Angela Ellison*, ECF No. 3415.

the Texas Action, the Court found privity existed because "any interest of Ditech [Financial], as loan servicer, in the Property's foreclosure is 'entirely derivative of Deutsche Bank's,' and was 'already defended' in the Texas Action." *Id.* at 15-16. The Court determined that both matters involved the "same nucleus" of operative facts—specifically the allegedly improper assignment of the mortgage and lack of standing to foreclose. *Id*. at 16. When comparing the Claim with the prior litigation, the Court noted the Plaintiffs themselves had referenced the connection between their filings, concluding that the Claim was "based on the same claims as were or could have been raised in the first action." *Id*. Finding that each element necessary to establish res judicata was met, the Court held that all allegations and arguments in the Claim were the same ones raised, or that could have been raised, in the Texas Action. *Id*.

After the Court disallowed and expunged the Claim, the Movants unsuccessfully reached out to the Plaintiffs to see if they would dismiss the Adversary Proceeding to avoid the cost and expense of this Motion. *See* Motion ¶ 1.

## **LEGAL PRINCIPLES**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009) (internal citation and quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state plausible claims, as allegations "must create the possibility of a right to relief that is more than speculative." *Motors Liquidation Co. Avoidance Action Tr. v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Co.)*, 563 B.R. 498, 505 (Bankr. S.D.N.Y. 2016) (internal citation and quotation marks omitted).

Plaintiffs must plead "more than a sheer possibility that a defendant has acted unlawfully" to survive a Rule 12(b)(6) motion to dismiss. *Nisselson v. Bank of the West (In re Cocoa Servs.,*

*L.L.C.)*, No. 17-11936, 2018 WL 1801240, at *4 (Bankr. S.D.N.Y. Apr. 13, 2018) (citing *Iqbal*, 556 U.S. at 678); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007) (dismissing complaint where plaintiff did not "nudge [its] claims across the line from conceivable to plausible"). It is "well settled that a court may dismiss a claim on res judicata or collateral estoppel grounds on a Rule 12(b)(6) motion." *Bd. of Managers of 195 Hudson St. Condo. v. Jeffrey M. Brown Assocs., Inc.*, 652 F. Supp. 2d 463, 470 (S.D.N.Y. 2009).

## MOTIONS

### Movants' Motion to Dismiss the Adversary Complaint

The Movants argue that the Adversary Proceeding is barred by application of the doctrine of res judicata as applied under Texas law, based on the Texas District Court Order dismissing the same claims with prejudice. Motion ¶¶ 1, 20. They assert that all three elements of res judicata under Texas law are met: (1) there is a prior final determination on the merits; (2) there is identity of parties or those in privity with them; and (3) the Adversary Proceeding is based on the same claims that were or could have been raised in the Texas Action. *Id.* ¶¶ 20-27.

Next, they contend that the Adversary Proceeding is barred by application of the doctrine of res judicata under federal law based on the Decision and Order disallowing and expunging the Claim. *Id.* ¶¶ 1, 28. They argue that all four elements of res judicata under federal law are satisfied: (1) the parties are identical; (2) the Decision and Order was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claims are involved in both proceedings. *Id.* ¶¶ 28-35.

Finally, the Movants assert that the Court must dismiss the monetary claims in the Adversary Proceeding because claims for money damages arising from pre-petition conduct must be asserted through the Claims Process, not through an adversary proceeding. *Id.* ¶¶ 36-39. They

maintain that Bankruptcy Rule 7001 sets out specific categories of controversies that can be commenced as adversary proceedings, and pre-petition claims for money damages are not among them. *Id.* ¶ 37.

## ANALYSIS

### The Adversary Proceeding Is Barred by Res Judicata
### Based on the Texas District Court Order

The Adversary Proceeding is barred by the doctrine of res judicata based on the prior dismissal with prejudice of the Texas Action. Texas state and federal courts recognize that the doctrine of res judicata bars claims that are based on the same transaction, or series of transactions, out of which the first action arose. *El Duranguense Fort Worth Inc. v. Texas Alcoholic Beverage Comm'n*, No. 02-19-00219-CV, 2020 WL 1465991, at *13 (Tex. App. Mar. 26, 2020); *see also Xitronix Corp. v. KLA-Tencor Corp.*, No. 03-12-00206-CV, 2014 WL 3893082, at *3 n.4 (Tex. App. Aug. 7, 2014) ("principles [of res judicata] are the same under Texas law" as under federal law). The Court previously found that "the claim preclusive effect of the [Texas District Court Order] is based upon 'the law that would be applied by state courts in the State in which the federal diversity court sits.'" Decision and Order at 13 (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001); *Howard Carr Cos., Inc. v. Cumberland Farms, Inc.*, 833 F. App'x 922, 923 (2d Cir. 2021)).

Under Texas law, res judicata, also known as claim preclusion, "prevents relitigation of a claim or cause of action that has been finally adjudicated in a prior suit, as well as related matters that, with the use of diligence, could have been litigated in that suit." *Pease v. Principal Residential Mortg., Inc.*, No. 03-02-00491-CV, 2004 WL 1065639, at *3 (Tex. App. May 13, 2004) (citing *Barr v. Resol. Tr. Corp.*, 837 S.W.2d 627, 628 (Tex. 1992)). The elements of res judicata under Texas law are: "(1) a prior final determination on the merits by a court of competent jurisdiction;

14

(2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were or could have been raised in the first action." *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

Significantly, Texas courts use the transactional approach to res judicata, barring subsequent suit of any matter that could have previously been brought if such matters arise out of the same subject matter as the previous suit. *See Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007); *accord Koncak v. Deutsche Bank*, No. 3:14-CV-3289-B, 2015 WL 11120868, at *2 (N.D. Tex. Nov. 13, 2015).

Each of the three elements of res judicata under Texas law is met in this case.

First, there is a prior final determination on the merits by a court of competent jurisdiction. The Texas Bankruptcy Court dismissed the Plaintiffs' claims with prejudice, stating it was dismissing "all claims Plaintiffs asserted, or could have asserted, against Defendants in the above-captioned proceeding." *See* Texas Bankruptcy Court Order at 2. The Texas District Court affirmed that order, finding that the Plaintiffs' appeal was "frivolous." *See* Texas District Court Order at 10. The Texas District Court Order constitutes an unequivocal adjudication on the merits that fully resolved all claims relating to the allegedly invalid assignment and foreclosure authority—the identical issues now raised in the Adversary Proceeding.

Second, there is identity of parties or those in privity with them. As this Court previously found, while Ditech Financial was not a party to the Texas Action, there was an identity of parties between Ditech Financial and Deutsche Bank as it relates to the Claim because "any interest of Ditech [Financial], as loan servicer, in the Property's foreclosure is 'entirely derivative of Deutsche's,' and was 'already defended' in the Texas Action." Decision and Order at 17. Both servicers acted in the same capacity regarding the Mortgage and Property, with their authority

flowing from the same alleged Assignment to Deutsche Bank as trustee. Their interests are functionally identical for purposes of the foreclosure action, as both entities' rights derive entirely from the same chain of title that was already fully litigated in the Texas Action.

This conclusion is consistent with established precedent. For example, in *Murphy v. HSBC Bank USA*, No. H-12-3278, 2017 WL 393595, at *5 (S.D. Tex. Jan. 30, 2017), the court held that "[t]he preexisting relationship between a mortgage holder, a mortgage servicer, and a mortgage lender usually is sufficient to establish privity for res judicata purposes." The case of *Koncak v. Deutsche Bank,* 2015 WL 11120868, also is instructive. There, Deutsche Bank acquired the note in its capacity as trustee, plaintiffs defaulted on the loan and subsequently brought an action for wrongful foreclosure against Deutsche Bank. *Id.* at *1. The court noted that "res judicata is meant . . . to achieve judicial economy by precluding those who have had a fair trial from relitigating claims. In other words, res judicata exists both to protect defendants from repetitive litigation and to limit plaintiffs to one bite at the apple." *Id.* at *3 (internal citations and quotation marks omitted). The court reasoned that any interest the loan servicer had in foreclosing on the property was "entirely derivative of Deutsche [Bank]'s" and thus it "has no interest in the Second Action independent of Deutsche [Bank]'s own authority to foreclose on the [p]roperty." *Id.* at *4. Since "Deutsche [Bank] already defended this precise interest in the First Action, [] the Court conclude[d] that [the servicer] is also in privity with Deutsche [Bank] for the purpose of this analysis." *Id.*

The same is true here. Any interest of Ditech Financial, as loan servicer, in the Property's foreclosure is "entirely derivative" of Deutsche Bank's and was "already defended" in the Texas Action. *Id.* Accordingly, the second element of res judicata is satisfied.

Third, the claims in the Adversary Proceeding are the same as were brought—or could have been brought—in the Texas Action. A side-by-side comparison of the complaints reveals that the Plaintiffs asserted identical claims in the Texas Action as in the Adversary Proceeding. Both complaints discuss the Assignment as "late" and "void" and allege a lack of standing to foreclose based on the failure to properly assign the mortgage. *Compare* Adversary Complaint ¶¶ 8-12, *with* Texas Action Complaint ¶¶ 5, 7, 9. The Texas Action alleged "there is a material breakdown in the Assignment Chain" and that the Assignment "occurred approximately 10 years after the Closing Date of the Trust in violation of the terms of the Trust." Texas Action Complaint ¶¶ 30, 43. The Adversary Proceeding similarly claimed the Assignment was "10 years late" and "not credible." Adversary Complaint ¶ 27. Both complaints also relied on the same legal theories regarding New York trust law and REMIC requirements, and both sought to invalidate the foreclosure authority on these identical grounds. *See id.* ¶¶ 34, 38; Texas Action Complaint ¶¶ 41-42.

"The key inquiry under this test is whether the two actions are based on the same nucleus of operative facts. Thus, the court examines the facts in each complaint to decide if they are part of the same transaction or series of transactions that arise from the same nucleus of operative facts." *Murphy*, 2017 WL 393595, at *5. Here, both actions have the "same nucleus": the allegedly late Assignment and foreclosure of the Property. Specifically, both the Texas Action and the Adversary Proceeding center on Plaintiffs' allegations that the Assignment of the Deed of Trust was invalid due to being "late" and "void," resulting in a lack of standing to foreclose. In both proceedings, the Plaintiffs argued the Assignment violated New York trust law and REMIC requirements because it occurred approximately ten years after the May 31, 2005 closing date of the Aames Mortgage Investment Trust 2005-2, rendering it void and unenforceable. Both actions

also challenged the foreclosure authority based on the same alleged failures in the securitization process and chain of title from Aames through the intermediary entities to the trust. Thus, the Adversary Proceeding is "based on the same claims as were or could have been raised in the first action." *Joachim*, 315 S.W.3d at 862.

Under the transactional approach adopted by Texas courts, the third element of res judicata has been met. Since all three elements are satisfied, the Adversary Proceeding is barred by the res judicata effect of the Texas District Court Order.

## The Adversary Proceeding Is Barred by Res Judicata
## Based on The Court Disallowing the Claim

The Adversary Proceeding is also barred by res judicata based on the Decision and Order disallowing and expunging the Claim. To determine the preclusive effect of the Decision and Order, this Court must look to federal law—the law of the court rendering the judgment. *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) ("The preclusive effect of a federal-court judgment is determined by federal common law."); *cf. New York v. Sokol (In re Sokol)*, 113 F.3d 303, 306 (2d Cir. 1997) ("the preclusive effect of a state court determination in a subsequent federal action is determined by the rules of the state where the prior action occurred" (citing 28 U.S.C. § 1738)).

Under federal common law, the test for res judicata has four elements: The earlier decision must have been "(1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 221-22 (2d Cir. 2012) (quoting *Adelphia Recovery Tr. V. HSBC Bank USA (In re Adelphia Recovery Tr.)*, 634 F.3d 678, 694 (2d Cir. 2011) (internal quotation marks omitted)).

All four requirements are satisfied in this case.

18

First, this Court sustained the Omnibus Objection and disallowed the Claim. The time to appeal the Decision and Order has passed, and the judgment has become final. A bankruptcy court's allowance or disallowance of a proof of claim is a final judgment for res judicata purposes. *See In re Roman Cath. Diocese of Rockville Ctr., New York*, 650 B.R. 58, 84-85 (Bankr. S.D.N.Y. 2023) (sustaining objections to claims where the same claims were previously dismissed with prejudice by court-ordered stipulation); *see also In re Jardine*, 647 B.R. 224, 229 (Bankr. D. Idaho 2022) (holding that "claims allowed through bankruptcy proceedings, such as the claim objection process, are treated as final judgments for res judicata purposes" (citing *Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525 (9th Cir. 1998)).

Second, the Decision and Order was rendered by this Court, which is a court of competent jurisdiction. The Claims Process was competent to render judgment on the monetary relief Plaintiffs seek in this Adversary Proceeding. While "[u]nder Bankruptcy Rule 7001, there are some matters that must go through the adversary process," *In re Live Primary, LLC*, 626 B.R. 171, 189 (Bankr. S.D.N.Y. 2021), pre-petition claims for monetary damages are not among them, *In re Borowiec*, 396 B.R. 598, 601 (Bankr. W.D.N.Y. 2008). Bankruptcy courts have express statutory authority to enter final judgments on such core proceedings. 28 U.S.C. § 157(b). The Court found that "[t]his is a core proceeding pursuant to 28 U.S.C. § 157(b)," Decision and Order at 4, and the Court's determination disallowing the Claim is entitled to preclusive effect. *See Boucher Imports, Inc. v. Quaden Motors, Inc. (In re Old Carco LLC)*, 438 F. App'x 30, 31 (2d Cir. 2011) (summary order) ("Once a bankruptcy court's order becomes final, the order is res judicata, even to claims that challenge the bankruptcy court's subject matter jurisdiction."); *see also In re Indesco Int'l, Inc.*, 354 B.R. 660, 664 (Bankr. S.D.N.Y. 2006) ("The doctrine of res judicata applies with equal

force to final judgments rendered by the bankruptcy courts." (internal citations and quotation marks omitted)).

Third, the parties to the Adversary Proceeding and with respect to the Claim are identical—the Plaintiffs filed both the Claim and the Adversary Proceeding against Ditech Financial.

Fourth, in the Adversary Proceeding the Plaintiffs assert the same claims for relief that they asserted in the Claim. Under this requirement, the Court's inquiry focuses on "whether the two claims arise from the same 'nucleus of operative fact.'" *Fried v. LVI Servs., Inc.,* 557 F. App'x 61, 64 (2d Cir. 2014) (summary order) (quoting *Waldman v. Vill. of Kiryas Joel,* 207 F.3d 105, 108 (2d Cir. 2000)).

Here, a review of the Claim and the Adversary Proceeding reveals that they share the same nucleus of operative facts. Both are based on the alleged improper assignment of the Mortgage and the alleged lack of standing by the servicers to foreclose on the Mortgage. *Compare* Claim at 2-6, *with* Adversary Complaint ¶¶ 2, 20, 26-37. The Claim and the Adversary Proceeding both challenge the same Assignment that occurred "ten years after the closing date of the Trust" and both assert that Ditech Financial lacked standing to foreclose based on this allegedly improper Assignment. Both proceedings seek identical monetary relief of $386,000 based on the same factual allegations regarding the Assignment and the foreclosure attempts.

The case of *Harriott v. Nationstar Mortgage LLC* presents a comparable situation where plaintiff attempted to relitigate foreclosure standing issues in a second forum. No. 17-CIV-4748, 2018 WL 4522102 (E.D.N.Y. Aug. 17, 2018), *report and recommendation adopted*, No. 17-CV-4748, 2018 WL 4853045 (E.D.N.Y. Sept. 28, 2018). There, the court found that the claims brought by plaintiff were barred under res judicata, since "[a]ll of Plaintiffs' claims . . . relate to parties' respective rights and interests under the Note and Mortgage and the right of [the bank] to proceed

20

with foreclosure, and Plaintiffs raised the same claims regarding the validity of [bank's] interests as they do in the current action." *Id.* at *7; *see also Caldor Corp. v. S Plaza Assoc., L.P. (In re Caldor, Inc.-NY)*, 217 B.R. 121, 128 (Bankr. S.D.N.Y. 1998) (a proof of claim and adversary proceeding are "logically connected" where both involve interpretation of same contract and both arise out of the same transaction so that judicial economy and fairness dictate that both be adjudicated in the same forum (citing *Lombard-Wall, Inc. v. N.Y.C. Hous. Dev. Corp. (In re Lombard-Wall, Inc.)*, 48 B.R. 986, 990 (S.D.N.Y.1985)).

The Plaintiffs assert that the Adversary Proceeding was filed "not to duplicate litigation, but in furtherance to adjudicate unresolved evidentiary issues on 'standing' related to the claims." Adversary Complaint ¶ 8. There is no merit to that contention. There are no "unresolved evidentiary issues" on standing that would justify a separate adversary proceeding, as the standing issues were fully addressed in the claims resolution process. *See* Decision and Order at 17. The Claim and the Adversary Proceeding involve the same Mortgage, the same Assignment, and the same foreclosure actions, making them logically connected proceedings arising from the same transaction. Notably, when briefing the Omnibus Objection, the Plaintiffs repeatedly invoked the allegations of the Adversary Proceeding as underlying and supporting the Claim, Opposition at 2, 4, further demonstrate that the Plaintiffs viewed these proceedings as interconnected and arising from the same operative facts.

Accordingly, as all four elements for res judicata under federal law are satisfied, the Adversary Proceeding is barred by the Court's Decision and Order disallowing the Claim.

**The Monetary Claims in the Adversary Proceeding Are Improperly Brought**

Beyond the res judicata grounds for dismissal, the Adversary Proceeding is also subject to dismissal because it improperly seeks monetary relief through an adversary proceeding rather than through the claims process.

"Bankruptcy Rule 7001 sets out nine specific categories of controversies that can and should be commenced as adversary proceedings. A claim for damages arising from pre-petition conduct is not one of those categories." *DBL Liquidating Tr. v. P.T. Tirtamas Majutama (In re Drexel Burnham Lambert Grp., Inc.)*, 148 B.R. 993, 998 (S.D.N.Y. 1992). Indeed, "[Bankruptcy Rule 7001] contains [an] exclusive list of matters which are classified as adversary proceedings. The list does not include a category for the recovery of claims against the debtor." *In re Johns-Manville Corp.*, 53 B.R. 346, 352-55 (Bankr. S.D.N.Y. 1985).

Courts in this Circuit have consistently held that pre-petition claims for money damages must be brought through the claim process, not as adversary proceedings. For example, in *In re Ephedra Products Liability Litigation*, 329 B.R. 1, 7 (S.D.N.Y. 2005), the court held that "[i]n bankruptcy, the only appropriate way to assert a claim against a debtor's estate is through the timely filing of a properly executed proof of claim and not through an adversary proceeding." Similarly, in *Wilson v. Residential Capital, LLC (In re Residential Capital)*, Adv. Pro. No. 12-01936, 2014 WL 3057111, at *6 (Bankr. S.D.N.Y. July 7, 2014), the court stated that "[d]amage claims should be asserted in a proof of claim."

This Court has previously held in this exact context that damage claims "should be resolved in the claims resolution process . . . not by means of this adversary proceeding." *McChristian v. Ditech Holding Corp. (In re Ditech Holding Corp.)*, Adv. Pro. No. 19-01137, 2021 WL 5048131, at *8 (Bankr. S.D.N.Y Oct. 28, 2021). When a complaint is "stripped of injunctive and declaratory

demands that are meaningless . . . [it] boils down to no more than a claim of money from the Debtors" and should be dismissed as improperly filed. *Id*. (quoting *In re Ephedra Products Liab. Litig*., 329 B.R. at 7). Most recently, the court reaffirmed that "prepetition claims for money damages must be addressed through a debtor's claims adjudication process rather than through an adversary proceeding." *In re LATAM Airlines Grp. S.A.*, No. 20-11254, 2022 WL 3965697, at *8 (Bankr. S.D.N.Y. Aug. 31, 2022), *aff'd sub nom. In re Latam Airlines Grp. S.A.*, No. 22-CV-8068, 2023 WL 4741335 (S.D.N.Y. July 25, 2023).

The Adversary Proceeding seeks primarily monetary relief—the type of relief that should be pursued through the claims process rather than an adversary proceeding. The Plaintiffs filed the Claim through the proper claims process, and this Court, after considering the Omnibus Objection and the Plaintiffs' Opposition, disallowed and expunged it. The Court finds the Plaintiffs cannot pursue the same relief through an adversary proceeding. This is an additional ground for dismissing the Adversary Proceeding.

**<u>Dismissal With Prejudice is Warranted</u>**

The Court also grants the Movants' request to dismiss this Adversary Proceeding with prejudice because amendment would be futile. Res judicata applies with full force to bar these claims, as both the Texas District Court Order and the Decision and Order disallowing the Claim have conclusively determined the same issues now raised in the Adversary Proceeding. The Plaintiffs have already had multiple opportunities to litigate their claims regarding the allegedly improper Assignment and lack of standing to foreclose, and each time their claims were rejected. No amendment could overcome the preclusive effect of these prior final judgments.

The Plaintiffs' fundamental theory that they can challenge the Assignment of their Mortgage has been repeatedly rejected by courts. *Costello v. Wells Fargo Bank Nat'l Ass'n*, No.

16-CV-1706, 2017 WL 3262157, at *17 (D. Conn. July 31, 2017), *aff'd*, 739 F. App'x 77 (2d Cir. 2018) ("Nonparties have no 'standing to enforce the agreements to which they were not parties and of which they were not intended beneficiaries.'" (quoting *Rajamin v. Deutsche Bank Nat. Tr. Co.*, 757 F.3d 79, 87 (2d Cir. 2014)). As non-parties to the Assignment agreements, the Plaintiffs lack standing to enforce those agreements or challenge their validity. The Plaintiffs have alleged no facts showing they are intended third-party beneficiaries of the Assignment at issue. Their challenges to the securitization process and allegations regarding violations of the pooling and servicing agreement are equally unavailing, as courts have consistently held that borrowers lack standing to bring such challenges. *Horton v. Wells Fargo Bank N.A.*, No. 16-cv-1737, 2016 WL 6781250, at *4 n.7 (S.D.N.Y. Nov. 16, 2016). The Plaintiffs were required to pay their Mortgage, regardless of the Assignment, and have not demonstrated any cognizable harm from the Assignment. *Houck v. U.S. Bank, N.A.*, 689 F. App'x 662, 664 (2d Cir. 2017) (summary order). The Plaintiffs' contradictory position was rejected by Texas courts as well, where these claims were "still based on the alternative assumption that [Bank] does indeed properly possess the Note," while simultaneously challenging that possession. *Riddle v. Rushmore Loan Mgmt. Servs., LLC (In re Riddle)*, No. 20-60075-13, 2022 WL 2019285, at *3 (Bankr. N.D. Tex. May 24, 2022).

Furthermore, there is no dispute regarding whether Ditech Financial has standing to service the Mortgage and initiate foreclosure proceedings. Under Texas law, "a mortgage servicer may administer a foreclosure on behalf of the mortgagee when there is an agreement granting the servicer authority to service the mortgage, regardless of whether the lender and/or servicer has possession of the original note." *Trevino v. Select Portfolio Serv., Inc, (In re Trevino)*, No. 10-70594, 2018 WL 5994753, at *3 (Bankr. S.D. Tex. Nov. 14, 2018). Similarly, the court previously recognized "[u]nder the Texas Property Code, the only party with standing to initiate a non-judicial

foreclosure sale is the mortgagee, or the mortgage servicer acting on behalf of the current mortgagee." *In re Residential Cap., LLC*, No. 12-12020, 2015 WL 2229234, at *5 (Bankr. S.D.N.Y. May 8, 2015) (quoting *Miller v. Homecomings Fin., LLC*, 881 F. Supp. 2d 825, 828-29 (S.D. Tex. 2012)).

Given that the Plaintiffs' claims are barred by res judicata and that courts have consistently found their underlying legal position to be without merit, no amendment could cure these fundamental defects. Dismissal with prejudice is therefore appropriate.

## **CONCLUSION**

Based on the foregoing, the Court grants the Motion. The Movants are directed to settle an order on ten days' notice.

IT IS SO ORDERED.

Dated:  May 29, 2025
New York, New York

/s/ *James L. Garrity, Jr.*
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge